UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Beatriz Santos Marrero,

        Plaintiff,

   v.

Commissioner of Social Security,

        Defendant.

**Decision and Order**

18-CV-6391 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 12, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 13, 16.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI[1] of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

---

[1] For the sake of the record, plaintiff had filed a claim under Title II but withdrew it in 2016 after amending her alleged disability onset date. [20.]

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

2

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's decision not to consider evidence submitted to the Appeals Council after the ALJ's decision. Specifically, plaintiff believes that certain treatment notes from Highland Family Medicine would have had a material impact on how the ALJ assessed her fibromyalgia:

> The Appeals Council, referring only to 2017 mental health treatment records Ms. Santos submitted, concluded the additional evidence does not relate to the period in question, so did not affect the ALJ's decision as to disability on or before the December 23, 2016 ALJ decision. R 2. The Appeals Council failed to mention, and presumably to consider, the treatment notes from Ms. Santos's primary care provider verifying her diagnosis of fibromyalgia. R 56–97. Yet that evidence could be outcome determinative to this case.
>
> As noted above, ALJ Ryan refused to consider Ms. Santos's fibromyalgia a severe impairment. He dismissed Dr. Pannu's "single reference" to the diagnosis. And he claimed the record does not confirm the requisite number of tender point findings, concluding the diagnosis did not comport with the requirements of Social Security Ruling (SSR) 12-2p. R 20. As discussed *infra*, he also discounted Dr. Pannu's opinions as to Ms. Santos's limitations, in part because she did not cite clinical findings or specific medical evidence supporting her reference to "diffuse pain at multiple pressure points" and diagnosis of Fibromyalgia. R 28.

(Dkt. No. 13-1 at 20 (footnotes omitted).) The Commissioner responds that the newly submitted evidence addressed only a small portion of plaintiff's treatment history and does not stand apart from the bulk of the administrative record as much as plaintiff believes:

> Here, substantial evidence continues to support the ALJ's decision. *See LaRock v. Astrue*, No. 7:10-CV-1019, 2011 WL 1883045 (N.D.N.Y. May 17, 2011) (denying request for remand because "the ALJ's decision remains supported by substantial evidence despite the new evidence submitted directly to the Appeals Council"). The new evidence consists of treatment notes from Dr. Pannu throughout the summer and fall of 2016 (Tr. 55–97). Plaintiff is primarily concerned with the September 2016 record that showed 18/18 tender points for fibromyalgia (Tr. 66). However, she fails to consider that the treatment notes from three months later document Plaintiff's fibromyalgia medication working well (Tr. 58). In fact,

4

> Dr. Pannu observed that Plaintiff's fibromyalgia was improving with treatment (Tr. 59). *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (A condition is not severe if the impairment improves from treatment.). Therefore, the weight of the evidence in the record remains in support of the ALJ's original decision.

(Dkt. No. 16-1 at 22–23.)

After reviewing the evidence that plaintiff had submitted to the Appeals Council, the Court is left with the same impression that the Commissioner formed. The evidence in question comprises treatment notes from Highland Family Medicine between May 15, 2016 and January 10, 2017. Plaintiff submitted the treatment notes to support a finding that her fibromyalgia was a severe impairment that left her with no RFC for any level of work. The May 15 and 24, 2016 progress notes did not mention fibromyalgia and focused on diabetes. [78–83.] In the July 11, 2016 progress note, Dr. Amanda Pannu noted that plaintiff was reporting "diffuse chronic pain" but did not mention fibromyalgia until one line in the Assessment and Plan that reads, "based on history of depression, strongly suspect fibromyalgia" [sic]. [76.] The progress note of August 9, 2016 recorded that plaintiff was reporting lower right leg chronic pain and that plaintiff "can't stand it anymore." [73.] The Assessment and Plan for that day made no mention of fibromyalgia, focusing instead on further testing to assess possible lumbar back pain with radiculopathy. [73.] The September 22, 2016 progress note did contain a diagnosis of fibromyalgia because plaintiff was "moderately-severely tender to palpation in 18/18 of identified tender points of fibromyalgia." [70.] The Assessment and Plan for that day contained a line that read, "given she is on an unknown depression medication, will not start medical treatment of this today" [sic]. [71.] In the October 26, 2016 progress note, Dr. Pannu noted that plaintiff continued to report chronic pain but decided that an ongoing medication for depression would have to be replaced with one that "will treat her depression and her fibromyalgia." [68.] Fibromyalgia was "not discussed in detail" during a visit on November 9, 2016. [66.] By December 8, 2016, Dr. Pannu's recommended medication switch

5

finally was underway. Plaintiff "states that the new medication is going well. She states that it is helping her chronic pain." [62.] Dr. Pannu's Assessment and Plan for that day included two lines stating that plaintiff was "improving on Cymbalta" and was "encouraged [to] follow up with psych." [63.] The last progress note, dated January 10, 2017, indicated that plaintiff was "going to counseling" for her fibromyalgia. [60.] Plaintiff also was continuing her prescription of Cymbalta, "which she thinks is helpful to her depression, but not necessarily helping her shoulder pain. She has tried massage, which is helpful to her." [60.] The Assessment and Plan for that day included notes indicating that Dr. Pannu "spent time discussing the link between her pain and her weight"; that Dr. Pannu "emphasized the importance of healthy diet and exercises. Before the next visit, we will brainstorm ways to motivate her to be more active"; and that Dr. Pannu would "continue Cymbalta for now." [61.] Taken together, the progress notes of 2016 and 2017 reveal a diagnosis of fibromyalgia with symptoms that were controlled with massage and medication. *Cf., e.g., Smith v. Berryhill*, No. 17-CV-1202, 2019 WL 2170764, at *5 (W.D.N.Y. May 20, 2019) ("The ALJ was entitled to consider medication taken and treatment received to relieve [fibromyalgia] symptoms, and therefore he did not err in finding that the plaintiff's success with medication and physical therapy diminished her credibility.") (citation omitted). The Appeals Council should have been more willing to consider these progress notes, but the progress notes contain no information about functional limitations that would distinguish them from the rest of the administrative record. *See, e.g., Smith v. Comm'r*, 351 F. Supp. 3d 270, 284 (W.D.N.Y. 2018) (no further consideration needed of records that "do not contain any information that would reasonably be expected to change the disability determination"). The Court thus finds no legal or factual error for this issue that requires disturbing the Commissioner's final determination.

Plaintiff next argues that the ALJ committed errors of law in the Step Five determination of work in the national economy that she could perform. Much of this argument rests on plaintiff's premise that the treatment notes from Highland Family Medicine from 2016 and 2017 have a material impact on the Commissioner's final determination. (*See, e.g.*, Dkt. No. 13-1 at 24 ("But as noted above, limitations imposed by Ms. Santos's treatment providers would preclude any work in the national economy.").) For the reasons addressed above, the Court respectfully disagrees with the premise. The rest of the argument addresses how the ALJ credited plaintiff's testimony and how the ALJ assigned weight to several treating sources or consultative examiners. After reviewing the administrative record, the Court agrees with the Commissioner's position that substantial evidence supported how the ALJ made assignments of weight.

The Court will address two other issues very briefly. Plaintiff argues that the ALJ failed to question her about purported issues with non-compliance. In general, ALJs have to avoid citing a claimant's non-compliance with treatment when that non-compliance occurs for reasons outside the claimant's control. *See* SSR 16-3p, 2016 WL 1020935, 81 FR 14166-01, at *14170 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following . . . An individual may not be able to afford treatment and may not have access to free or low-cost medical services."). "It would fly in the face of the plain purposes of the Social Security Act to deny claimant benefits because he is too poor to obtain additional treatment that had proved unhelpful." *Shaw v. Chater*, 221 F.3d 126, 133 (2d Cir. 2000); *accord Burger v. Astrue*, 282 Fed. App'x 883, 884 (2d Cir. 2008) (summary order) ("In this case, however, Burger offered an explanation for her decision to seek only occasional emergency treatment: she was uninsured and could not pay for regular medical care."). The Court does not see that problem here. The reference to non-compliance that plaintiff has cited [30] is a reference to medication that plaintiff had but was not

taking. [626, 628.] Finally, plaintiff argues that the vocational expert who assisted the ALJ at Step Five did not do enough to address plaintiff's language barrier. "At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert. An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion, and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation and editorial marks and citations omitted). A vocational expert's failure to account for language barriers when addressing available work can require remand for further development of the record. *See, e.g., Gonzalez-Cruz v. Comm'r*, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018) (remand required to account for "limited English communications skills"), *reconsideration denied*, No. 16-CV-6613P, 2018 WL 3151656 (W.D.N.Y. June 27, 2018); *Cortes v. Colvin*, No. 13 CIV. 9098 AJP, 2015 WL 2166111, at *12 (S.D.N.Y. May 11, 2015) ("Moreover, ALJ Penalver did not question the vocational expert about whether an illiterate hypothetical individual of Cortes' age, education and work experience who is limited to no reaching whatsoever could work as a school bus monitor, the only job cited by the vocational expert for that level of restriction."). No such failure occurred here. At the hearing, the vocational expert specifically addressed "the inability to communicate in English." [107.] The vocational expert accounted for plaintiff's language barrier by recommending jobs that "are low-skilled occupations, with little need for communication." [112.] The vocational expert's recommendations are consistent with plaintiff's own testimony that she can speak "basic things in English." [124.] *Cf. Yassin v. Comm'r*, No. 5:12-CV-1712 LEK/CFH, 2014 WL 795989, at *13 (N.D.N.Y. Feb. 27, 2014)

(Commissioner affirmed where "the ALJ took into consideration [plaintiff's] limited English abilities in [his] RFC and to do other work in the national economy").

### III.   CONCLUSION

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 16) and denies plaintiff's cross-motion (Dkt. No. 13).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                    __/s Hugh B. Scott_____
                                    Hon. Hugh B. Scott
                                    United States Magistrate Judge

DATED: July 31, 2019